GREENE COUNTY COURT (UNITED STATES v.). See Case No. 15,259.

---

## Case No. 5,770.

### The GREENE COUNTY TANNER.
### The J. W. WOODRUFF.

[8 Ben. 396.] [1]

District Court, S. D. New York. March, 1876.

COLLISION IN HUDSON RIVER—SAILING VESSELS— PRIVILEGED TACK—LOOKOUT—PLEADING.

1. Two schooners, the T. and the W., were beating up the Hudson river, the wind blowing down the river. Both vessels had been standing on their starboard tack towards the Jersey shore. The T. was ahead and stood out her tack and went about near the Jersey shore and came on her port tack. The W. continued on her starboard tack and the vessels collided, the stem of the W. failing to clear the stern of the T. by only a few feet. The master of the T. claimed that, before going about, he looked to see where the W. was and saw her about a third of the way across the river from the Jersey shore, heading nearly across the river but a little up, and being a little further up the river than the T. was; that, after the T. had gone about and he had ordered her jib to be drawn away, he saw that the W. was about 100 or 150 feet off, pointing for his starboard quarter, whereupon he put his wheel to starboard, and, just as his

1 [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

sails began to shake, the collision occurred. Cross libels were filed by the owners of each schooner against the other: Held, that on the libel of the Tanner, filed four days after the occurrence, which did not claim that the W. was so near the Jersey shore as not to leave room for the T. to go about with safety, and on the evidence, the T. got headway on her port tack; before she did anything in discharge of her duty to keep out of the way of the W., which was on the privileged tack.

2. The master of the T. either came about without carefully observing the W., or, if he observed her, persisted in coming on his port tack and trying to cross the bows of the W. instead of porting and going under her stern.

3. The W. had the right to keep her course and was not in fault in that she did not try, by starboarding, to go under the stern of the T.

4. As the W. did not fail in her duty, her keeping or not keeping a lookout was not an element in the case.

5. The T. was responsible for the damages.

In admiralty.

Benedict, Taft & Benedict, for the Tanner. Scudder & Carter, for the Woodruff.

BLATCHFORD, District Judge. These are cross libels growing out of a collision which occurred in the Hudson river, off Jersey City, on the 14th day of November, 1874, in the day time, between the schooner Greene County Tanner and the schooner J. W. Woodruff. The wind was blowing down the river and both vessels were beating up. Prior to the collision both vessels had been standing on the starboard tack, heading towards the New Jersey shore, from the city of New York. The Tanner was ahead, and stood out her tack, and went about near the New Jersey shore and came upon her port tack. The Woodruff continued on her starboard tack, and the two vessels collided. The claim on the part of the Woodruff is, that, as both vessels were close hauled, it was the duty of the Tanner, having the wind on her port side, to keep out of the way of the Woodruff, which had the wind on her starboard side; that it was equally the duty of the Woodruff to keep her course; that the Woodruff did keep her course; and that the Tanner was in fault in not avoiding the Woodruff. The rule of navigation in such a case is very clear, that the vessel on the port tack must avoid the other vessel, and that the latter must keep her course. If she does keep her course and a collision ensues, the burden of proof is on the other vessel to show some satisfactory reason why she did not keep out of the way.

The libel on the part of the Tanner avers that the Tanner, on her starboard tack, stood in as close to the shore as it was proper to stand; that, at that time, the Woodruff was still on her starboard tack, but much farther from the New Jersey shore; that the Tanner then properly came about on her port tack, heading towards the New York shore, close-hauled; that thereupon it became the duty of the Woodruff to go about in time to prevent a collision, or to keep away and go

under the stern of the Tanner, as she could easily have done, there being nothing in the way to prevent either of such manoeuvres on her part; that the Tanner had barely got filled away on her port tack, when those in charge of her perceived that the Woodruff was keeping on, without going about or going under the stern of the Tanner; that thereupon an effort was made by the Tanner to go about again in order to avoid the Woodruff, but before the heading of the Tanner was changed more than a point or two, or her headway checked, the vessels collided; and that the collision was the result of the reckless and unskilful navigation of those navigating the Woodruff, in that they failed to go about as they should have done, and failed to keep away and go under the stern of the Tanner, as they could easily have done, and failed to keep a lookout. It is to be observed that the purport of these allegations in the libel of the Tanner is, that the reason and the excuse set up for the Tanner's not keeping out of the way of the Woodruff is, that the Woodruff did not do something to keep out of the way of the Tanner and did not allow the Tanner to keep her course. The libel of the Tanner does not allege that the Tanner could not have avoided the collision, or that the Woodruff crowded her and did not give her room to tack; and the substance of it is, that the Tanner was on the privileged tack.

On the evidence, it is contended, for the Tanner, that her master, who was at her wheel, looked around to see where the Woodruff was before he hove his wheel down to go about, and saw her about one-third of the way over from the New Jersey shore, heading nearly across the river, but a little up, and a little farther up the river than the Tanner was; that the Tanner then went about, and her master, after he had ordered his jib to be drawn away, looked to see where the Woodruff was, and saw her pointing for the starboard quarter of the Tanner and 100 or 150 yards off; that he then put his helm at once to starboard, and, just as his sails began to shake, the collision occurred, the bow of the Woodruff failing by only a few feet to clear the stern of the Tanner on the starboard side of the Tanner. On these facts, it is contended that the Woodruff should either have gone about or have starboarded and allowed the Tanner to cross her bows. But the libel on the part of the Tanner, filed four days after the occurrence, says, very distinctly, that, when the Tanner went about, the Woodruff was much farther from the New Jersey shore than the Tanner was, and does not intimate that the Woodruff was not so far from the New Jersey shore as to make it safe for the Tanner to go about, even if the Woodruff kept on her course. The libel on the part of the Tanner also says, very distinctly, that the Tanner got filled away on her port tack, and got headway on, on such tack, before she did anything in discharge of her duty to keep out of the way of the Woodruff. It is very apparent, from the libel of the Tanner and the evidence, that the master of the Tanner either saw clearly all the time where the Woodruff was, and persisted in coming on his port tack and trying to get across the bows of the Woodruff, in disregard of his obligation either to refrain from filling away on his port tack or to port, when on that tack, sufficiently to go under the stern of the Woodruff; or else he was negligent, and did not carefully observe the Woodruff, and suddenly found himself in presence of a vessel which he was bound to avoid. The Woodruff had a right to keep her course, and had a right to suppose that the Tanner would understand that, and to suppose that the Tanner would see in time that she could not cross the bows of the Woodruff and would port and go under the stern of the Woodruff. In this view, if the Woodruff had starboarded and the Tanner had at the same time ported, a collision would certainly have occurred, for which the Woodruff alone would have been in fault.

It is urged for the Tanner, that the evidence shows that the Tanner could not, by porting, have cleared the Woodruff. That may be, but that does not exonerate the Tanner, or make it a fault in the Woodruff that she did not starboard. It was the fault of the Tanner that she allowed herself to get into a position where she could not, by either porting or starboarding, keep clear of the Woodruff, and the Woodruff had a right to suppose, that, as the Tanner ventured to fill away on her port tack and to get headway on, on that tack, she could and would, if not able to cross the bows of the Woodruff, go under the stern of the Woodruff, by porting.

I see no fault on the part of the Woodruff, in respect to keeping a lookout. As she failed in no duty, her keeping or not keeping a lookout is not an element in the case. The libel of the Tanner must be dismissed, with costs, and in the suit by the Woodruff there must be a decree for the libellants, with costs, with a reference to a commissioner to ascertain the damages.